IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

NYAH TRYVAN WINSLOW                                                          PLAINTIFF

v.                                                         CIVIL ACTION NO. 4:08CV083-SAA

COMMISSIONER OF SOCIAL
SECURITY                                                                     DEFENDANT

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's denial of child's insurance benefits and supplemental security income benefits under sections 223(d) and 1614(a)(3)(A) of the Social Security Act to Nyah Winslow ("plaintiff"). The district court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), both parties have consented to have a magistrate judge conduct all the proceedings in this case; the undersigned therefore has the authority to issue this opinion and the accompanying final judgment.

**FACTS**

The plaintiff protectively filed her applications for benefits on October 18, 2004. She previously received Supplemental Security Income payments, but her disability was found to

have ceased in June 1997, when she was 17 years old.[1] Her applications in this case claim a disability beginning October 1, 2002, immediately before her twenty-second birthday.[2] At the time of the hearing decision, on November 5, 2007, she was 27 years of age. Plaintiff's applications were denied both initially and on reconsideration. She timely filed a request for hearing, which was held on September 6, 2007. Plaintiff's applications state that she is disabled due to her learning disabilities, psychological impairments, including schizophrenia, and obesity. In his decision, the ALJ found that plaintiff was not disabled as defined by the Social Security Act and denied plaintiff's request for benefits. Plaintiff unsuccessfully sought review from the Appeals Council and timely filed suit in this court.

## **STANDARD OF REVIEW**

In all Social Security cases, at all stages of the proceedings the burden rests upon the plaintiff to prove disability. *See Kraemer v. Sullivan*, 885 F.2d 206, 204 (5th Cir. 1989); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). In determining disability, the Commissioner, through the ALJ, works through the five-step sequential evaluation process established by the Social Security Administration.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[4]

---

[1] The plaintiff pursued the cessation of benefits and ultimately a denial decision was issued. The issue of cessation of benefits is not before the court in this case.

[2] To be entitled to child's insurance benefits, the plaintiff must show that she has a disability that began before she turned 22 years old.

[3] *See* 20 C.F.R. §§ 404.1520 (1996) & 416.920 (1996).

[4] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

2

The steps are:

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2. An individual who does not have a "severe impairment" will not be found to be disabled.
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4. If an individual is capable of performing the work [s]he has done in the past, a finding of "not disabled" must be made.
> 5. If an individual's impairment precludes [her] from performing [her] past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Dominguez v. Astrue,* 286 Fed.Appx. 182, 187-188, 2008 WL 2787483, 4 (5th Cir., 2008). In analyzing step five, considering plaintiff's RFC, age, education and past work experience, the ALJ determines whether she is capable of performing other work.[5] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[6] Under applicable Social Security rules and regulations, the Commissioner has the final responsibility for determining an individual's residual functional capacity ("RFC"), whether that RFC prevents her from doing past relevant work, and ultimately for determining whether an individual is disabled under the Social Security Act. *See* 20 C.F.R. § 404.1527.

### III. DISCUSSION

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standard. *Muse v.*

---

[5] 20 C.F.R §§ 404.1520(f)(1) (1996) & 416.920(f)(1) (1996).

[6] *Muse*, 925 F.2d at 789.

*Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has a limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[7] even if it finds that the evidence leans against the Commissioner's decision.[8] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). If the Commissioner's decision is supported by the evidence, it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994). The court's inquiry is whether the record as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401(1971).

---

[7] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[8] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

In this case the ALJ found that the plaintiff suffered from borderline intellectual functioning and obesity, but that she did not suffer from an impairment or a combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations. After careful review of the record as a whole, the ALJ found that the plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but is limited by several non-exertional limitations:

> she has a poor or no ability to understand, remember, and carry out complex job instructions; a fair ability to understand, remember and carry out detailed job instructions and a good ability to understand, remember and carry out simple job instructions (The definition of good: ability to function in this area is more than satisfactory. The definition of fair: ability to function in this area is limited but satisfactory. The definition of poor: ability to function in this area is seriously limited but not precluded. The definition of none: no useful ability to function in this area).

(Tr. 18). In making this finding, the ALJ determined that both plaintiff's and her mother's regarding plaintiff's subjective complaints and abilities lacked credibility. *Id.* He also afforded significant weight to the opinions of the DDS medical and psychological consultants, Dr. Gilbert S. MacVaugh, Jr, Ph. D., and Angela O. Herzog, Ph. D., and gave little weight to Dr. Khaled Abu-Hamdan, plaintiff's treating psychiatrist's opinion. (Tr. 19). He determined that the claimant did not meet the requirements of §12.05B of the listings as there was "no support for the claimant's IQ scores within the listing range" and that "[t]he claimant malingered on the testing." (Tr. 19).

Based on his findings and considering the plaintiff's RFC, age, education (a high school special education certificate), and lack of any past relevant work, the ALJ relied on both the testimony of a vocational expert ("VE") and the Medical-Vocational Guidelines, section 204.00,

5

to determine that there are jobs in the national economy, including a hand cutter or hand packager, that the plaintiff is able to perform. (Tr. 19-20). Accordingly the ALJ found that the plaintiff was not disabled as defined by the Social Security Act. *Id.* The court has reviewed the decision, transcript, and record in the case as well as the parties briefs and finds that the decision of the ALJ was not supported by substantial evidence and should be reversed.

## ISSUES ON APPEAL

Although plaintiff raises four issues as grounds for her assertion that the decision of the ALJ is legally defective and should be reversed or remanded to the ALJ for reconsideration, the court will focus on only two:

1. The Administrative Law Judge erred in finding that the plaintiff's condition does not meet or equal Listing 12.05; and

2. The Administrative Law Judge's decision is not based on a proper standard of law in that he rejected the opinion of the plaintiff's treating psychiatrist and psychologist without adequate explanation.

<u>Listing 12.05B</u>

Listing 12.05 of 20 C.F.R. Part 404, Subpart P, App. 1, states, in part:

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22). . . .The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;. . . .

When a plaintiff's impairment is either in the Listing of Impairments or is determined to be equivalent to a listed impairment, the presumption of disability applies and further inquiry into work ability becomes unnecessary. *Selders v. Sullivan,* 914 F.2d 614, 619 n. 1 (5th Cir.1990); see also *Sullivan v. Zebley,* 493 U.S. 521 (1990)).

In this case, the plaintiff has established that around age seven or eight the Social Security Administration awarded her supplemental security income payments. These benefits continued until 1997, when the Commissioner determined that she was no longer under a disability. According to the record, plaintiff was administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R) test in 1997 at the age of 16 and received a Verbal IQ score of 79, a Performance IQ score of 86 and a Full Scale IQ Score of 81, which placed her in the low average range of intelligence. (Tr. 151-152). She took the WAIS again in June 2005 at Delta Community Mental Health Center, where the test was conducted by examining psychological assistant Linda Rodgers and reviewed and concurred with by Dr. Douglas A. Cole, Ph. D. This time plaintiff received a Verbal IQ of 55, a Performance IQ of 53 and a Full Scale IQ of 50. (Tr. 199).

During a comprehensive mental status evaluation at the request of the State Agency in 2007, Gilbert S. MacVaugh, Jr., Ph.D. administered a third test, the WAIS-III. (Tr. 239). The results of MacVaugh's administration of the WAIS-III revealed a Verbal IQ score of 50, a Performance IQ of 51, and a full scale IQ of 46, which placed her in the upper range of moderately mentally retarded. *Id.* In his report MacVaugh stated "I strongly suspect the IQ data are not valid and may well underrepresent her true potential level of intellectual functioning."

7

(Tr. 239). However, he also noted the disparity between the scores of plaintiff's 1997 IQ test compared to his and the June 2005 scores, therein noting the similarity of his scores and the June 2005 scores. (Tr. 240). Although clearly questioning the validity of his scores, he went on to state, "[i]n making a determination on this case it would be wise to review her academic transcripts and other standardized test results from the school which were not sent today." (Tr. 241). "If what I saw on [sic] the office today is typical of her ongoing behavior I doubt she would/could prevail for long on the open labor market wherein she would be required to perform routine, repetitive type tasks, accept supervision and maintain attention and concentration." *Id.*

In April 2005 the plaintiff's treating psychiatrist, Dr. Hamdan, diagnosed the plaintiff with schizophrenia, undifferentiated type, with poor prognostic indicators and moderate mental retardation. (Tr. 196). He noted that she suffered from auditory hallucinations (hearing voices) and prescribed Geodon which was to be provided as samples. (Tr. 203). The records from Delta Community Mental Health establish that the plaintiff was treated at least 23 times over a three-year period are replete with notations that the plaintiff received medication by prescription as well as through samples provided at her visits. (Tr. 195 - 233). Although the records do reveal that there are times where plaintiff was without medication for a short period, (Tr. 217, 230 - 231), she was generally "medication compliant" and responded well to the prescription. (Tr. 219, 221-228, 229, 232-233). Dr. MacVaugh's report also diagnosed plaintiff with "Psychotic Disorder NOS (provisional)" and "Unspecified mental retardation versus mental retardation-mild (actual measured IQ within the moderate MR range)," a finding which was consistent with Dr. Hamdan's findings. (Tr. 240).

The transcript of the hearing reveals that the ALJ seems to have been almost exclusively

8

focused on determining the reason behind the disparity between the plaintiff's 1997 IQ scores – a full scale IQ score of 86 – and the 2005 and 2007 IQ scores – full scale IQ score of 50 and 46, respectively. (Tr. 281-283, 284-285). As a result, Dr. Hamdan and Ms. Rogers wrote a letter to the ALJ, dated September 7, 2007, stating that plaintiff was certainly "not faking her symptoms." (Tr. 244). Further, Dr. Hamdan stated that plaintiff developed Schizophrenia after her "formal schooling years" and as a result she has lost cognitive functioning and the ability to learn resulting in lower IQ test scores. *Id.* In his decision the ALJ rejected Dr. Hamdan's letter explanation for the lower IQ test scores (Tr. 17, 19) and, as noted, found testimony by the plaintiff and her mother to be not entirely credible. (Tr. 18). He then afforded the DDS "medical and psychological consultants . . . significant weight as their opinions are well supported by and consistent with the evidence of the record." (Tr. 19). Finally, he concluded that the plaintiff does not meet the requirements of 12.05B, "as there is no support for the claimant's IQ scores within the listing range. The claimant malingered on the test." *Id.* Nevertheless, the ALJ's determination that the plaintiff malingered on the tests by Delta Community Mental Health and Dr. MacVaugh, is not supported by substantial evidence. Further, the ALJ provided no basis other than Dr. MacVaugh's report for his assertion that she malingered. Review of Dr. MacVaugh's report reveals that he certainly has "question about the validity of the IQ/achievement test scores" and "that her motivation and cooperation levels were fair at best." (Tr. 240-241). Nevertheless, he found that she "was not oppositional or belligerent." *Id.* at 241. Finally, he stated that "[i]n making a determination on this case it would be wise to review her academic transcripts and other standardized test results from the school which were not sent today." (Tr. 241). "If what I saw on [sic] the office today is typical of her ongoing behavior I

9

doubt she would/could prevail for long on the open labor market wherein she would be required to perform routine, repetitive type tasks, accept supervision and maintain attention and concentration." *Id.* Thus Dr. MacVaugh's conclusions were essentially that notwithstanding his inability to state conclusively that she malingered on the test, the plaintiff would not be able to function, much less prevail, in the job market due to her mental problems and limitations in any event.

The court has carefully reviewed the entire record in this case, and there is clearly a discrepancy between the 1997 IQ scores and the 2005 and 2007 test scores. However, even though the ALJ found that the plaintiff malingered on the 2007 test given by Dr. MacVaugh, on which she received a full scale IQ score of 46, there remains the 2005 full scale IQ score of 50 which appears valid, and there is no evidence in the record to contradict its validity. The ALJ found no cause to question these scores, absent their significant drop from 8 years earlier. There is no evidence that the plaintiff malingered on the 2005 test. In fact, the scores are supported by three years of medical records, notes and opinions from treating mental health professionals that support and underscore these test results.

Intelligence test results obtained at age 16 or older may be assumed to apply to the plaintiff's current status provided they are compatible with the individual's current behavior. SSR 82-54, TITLES II AND XVI: MENTAL DEFICIENCY-INTELLIGENCE TESTING , p. 785. However, when test results obtained in the past are incompatible with current behavior, current testing will be required. *Id.* In this case, medical evidence provided from Delta Community Mental Health shows that plaintiff's mental status had changed for the worse since she was evaluated in 1997. Records reflect that she began hearing voices in her late teens and

that she developed schizophrenia in her early twenties. In the six months before her initial visit to Delta Community Mental Health, April 2005, she had begun responding to these voices or internal stimuli. (Tr. 198). Further, the records shows that she had become withdrawn, rarely verbalized responses to questions and was unable to care for herself. (Tr. 195 - 233).

The plaintiff asserts that the ALJ erred as a matter of law by not specifically finding that the she met the requirements of the listing for mental retardation. It is true that the criteria for the listings are demanding and stringent, *Falco v. Shalala,* 27 F.3d 160 (5th Cir. 1994), and it is the plaintiff's burden to prove that her condition satisfies the listing. In this case, the medical evidence reveals that the plaintiff's full scale IQ score is 50. The plaintiff correctly asserts that where an ALJ merely states a summary conclusion that the plaintiff's impairments did not meet or equal any Listed Impairment, without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning, the decision is not supported by substantial evidence. *Burnett v. Commissioner of Social Sec,* 220 F.3d 112, 119-120 (3rd Cir. 2000); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As the *Clifton* court stated, "[s]uch a bare conclusion is beyond meaningful judicial review." *Clifton* at 1009.

In this case, even if the court accepts that the ALJ was correct in asserting that the plaintiff's 2007 test scores were not valid, the ALJ has provided no basis for discounting or discrediting the validity of the 2005 test scores – a full scale IQ of 50. According to Listing 12.05B, a plaintiff meets the listing and is therefore presumptively disabled under the Act if she has "[a] valid verbal, performance, or full scale IQ of 59 or less;. . . ." Plaintiff's June 2005 test scores show that the plaintiff has a verbal score of 55, a performance score of 53 and a full scale score of 50. Each of these scores meets the requirements of Listing 12.05B. There is no

11

evidence in the record to contradict these scores or to provide a reasonable basis for doubt as to their validity. The court concludes that the ALJ's decision that the plaintiff did not meet the requirements of the listing is not supported by substantial evidence and must be reversed.

Failure to Afford Proper Weight to Opinions of Treating Physicians

The Fifth Circuit has held that generally "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995); see also 20 C.F.R. § 404.1527(d)(2). Although the treating physician's opinion and diagnosis should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted). Good cause may exist to allow an ALJ to discount the weight of evidence from a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000).

However, for an ALJ to properly afford lesser weight to the medical opinions of a treating physician, he must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). *Newton* noted the factors that the ALJ must consider under the agency's own regulations before declining to give evidence of a treating physician controlling weight:

>     (1) the physician's length of treatment of the claimant,
>     (2) the physician's frequency of examination,
>     (3) the nature and extent of the treatment relationship,
>     (4) the support of the physician's opinion afforded by the medical evidence of record,
>     (5) the consistency of the opinion with the record as a whole; and
>     (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). Social Security Administration Regulations provide that the Social Security Administration "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." The regulation is construed in SSR 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

*See also Newton*, 209 F.3d at 456.

Under SSR 96-5p, an ALJ must provide appropriate explanations when he declines to afford controlling weight to the treating physician's opinions. *Id.* In this case, the ALJ failed to follow any of the necessary regulations or outline any of the required factors and information to afford lesser weight to plaintiff's treating psychiatrist Dr. Hamdan, much less to disregard his opinions and evidence completely. For this reason, the court holds that the ALJ's decision was not based on substantial evidence.

<u>Determination of Benefits</u>

In determining whether to reverse the Commissioner's final decision and remand or to grant benefits without further administrative review, the court must look to the completeness of

13

the record, the weight in favor of the plaintiff, the harm to the claimant that further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by a deserving plaintiff. SOCIAL SECURITY LAW & PRACTICE, §55.77, p. 129.  In this case, the plaintiff has been very patient.  She has been seeking benefits through the administrative processes for almost five years.[9]  The evidence in this case is clear.  Plaintiff's treating psychiatrist, who had a three-year treatment history with the plaintiff consisting of over twenty office visits with Delta Community Mental Health, determined that she developed schizophrenia in her late teens or early twenties, is unable to care for herself or function beyond that of a preschool age child, that her medication appears to be helping, that she obtains her medication mainly through samples or vouchers to help with the costs of the medication, and that with the help of her mother she is generally medication compliant.  Plaintiff's 2005 IQ test scores fall squarely within the requirements of Listing 12.05B of the Social Security Act, and the plaintiff is therefore presumed disabled under the Act without further inquiry into her work ability.  Accordingly, the court holds that because the evidence is conclusive, an award of benefits at this stage would be in the best interests of the plaintiff's health and welfare and will avoid further undue delay which would result upon remand for additional review.  The court directs that this case be remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## CONCLUSION

For the forgoing reasons, the court finds that the decision of the ALJ was not supported by substantial evidence, that plaintiff's IQ test scores fall within the listing requirements of Listing 12.05B and plaintiff is entitled to benefits under the Social Security Act.  This case is

---

[9]Plaintiff filed her applications for benefits October 18, 2004.

remanded for the purpose of determining the amount of benefits to be awarded. An order in accordance with this memorandum opinion will issue this day.

This the 18th day of August, 2009.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE